LUDYS NINO,                          :
                                     :
        Plaintiff,                   :
                                     :
v.                                   :    Case No. 3:18-cv-1743 (RNC)
                                     :
JPMORGAN CHASE BANK, N.A.,           :
WASHINGTON MUTUAL BANK, FA, and      :
BANK OF AMERICA, N.A.,               :
                                     :
        Defendants.                  :

## RULING AND ORDER

Plaintiff Ludys C. Nino brings this action against JPMorgan Chase Bank National Association ("JPMC"), Washington Mutual Bank, FA ("WAMU"), and Bank of America National Association ("BANA") (collectively, "Defendants") asserting twenty causes of action relating to a mortgage loan plaintiff obtained from WAMU on December 11, 2006 (the "2006 WAMU loan").[1]  The mortgage has been the subject of a foreclosure action in state court, which resulted in entry of a judgment of strict foreclosure.  See Bank of America National Association v. Nino, No. FST-CV-10-6005691-S (Conn. Super.).  Defendants have moved to dismiss the complaint in its entirety under Rules 12(b)(1) and 12(b)(6).  Plaintiff has moved for leave to amend the complaint to add new claims and

---

[1] The complaint refers to an undefined and unnamed defendant, "CHF."  See, e.g., ECF No. 1 at ¶ 34.  Because "CHF" is neither listed as a named defendant nor identified in any way, the references to "CHF" are given no significance for purposes of this ruling.

defendants to the action.  For reasons that follow, the motion

to dismiss is granted, and the motion to amend is denied.

I.   <u>Background</u>

The complaint alleges the following chronology of events:

<u>Origination of the 2006 WAMU loan</u>

Plaintiff obtained the 2006 WAMU loan in connection with

the purchase of her home.  She agreed to borrow $780,000 at an

initial interest rate of 5.70% and initial monthly payments of

$4,527.12 per month, and executed a series of documents,

including a note designating Washington Mutual Bank, FA, as the

lender.  Washington Mutual Bank, FA was a tradename of WAMU.

WAMU securitized the loan and included it as an asset underlying

a Residential Mortgage Backed Security ("RMBS").  Plaintiff

alleges that her electronic signature was forged on the

electronic note included in the RMBS.  Plaintiff did not receive

notice from WAMU or any other party documenting the

securitization of her loan.

<u>Failure of WAMU</u>

On September 25, 2008, WAMU was closed by the Office of

Thrift Supervision and placed into receivership by the Federal

Deposit Insurance Corporation ("FDIC").  The FDIC, as Receiver

for WAMU, subsequently entered into a Purchase and Assumption

Agreement with JPMC ("the Purchase and Assumption Agreement"),

whereby JPMC acquired the assets and certain liabilities of

WAMU.  JPMC acquired servicing rights for WAMU's residential
mortgage portfolio but did not acquire WAMU's liability for
borrower claims arising prior to September 25, 2008.[2]  Plaintiff
did not receive notice of this transaction.

## Plaintiff Receives a Notice of Default

In late 2009, plaintiff began experiencing financial
hardship and failed to make her December 1 mortgage payment on
time.  She made one payment of $5,175.22 on December 22, and
another on January 29, 2010.  On February 1, 2010, she received
a notice of default from "CHF" through which "Defendant"
demanded $9,054.24.  ECF No. 1 at ¶ 19.  Plaintiff made
additional payments after February 1, in the amounts of
$4,257.57 on April 22, and $3,000 on April 29.

## BANA Commences the 2010 Foreclosure Action

On April 22, 2010, BANA filed a foreclosure action (the
"2010 Foreclosure Action") against plaintiff in the Superior
Court of Connecticut.  The complaint named BANA as the owner of
the mortgage loan.

After the foreclosure action was commenced, plaintiff
attempted to make four payments of $3,000 each to "CHF" on May

---

[2] Defendants have attached a copy of the Purchase and Assumption Agreement to
their motion to dismiss.  The complaint incorporates the document by
reference because it makes a "clear, definite and substantial reference to
the document" in paragraph 15.  Stinnett v. Delta Air Lines, Inc., 278 F.3d
599, 608 (E.D.N.Y. 2017) (setting out standard for incorporation by
reference).

24, June 11, July 2, and August 13, 2010.  None of the payments were accepted.

On January 24, 2012, BANA sent plaintiff a letter "declaring in relevant part that [it] had no record of ever owning or possessing" the 2006 WAMU loan.  ECF No. 1 at ¶ 27.

On February 2, 2012, JPMC recorded an assignment of mortgage purporting to declare itself the owner in possession of the 2006 WAMU loan and purporting to sell it to BANA for $1.00. Plaintiff alleges that the assignment of mortgage is invalid because, among other reasons: (1) BANA previously stated it had no record of ownership of the loan; (2) there are no instruments documenting when JPMC became the owner of the loan; and (3) JPMC filed claims for indemnity with the FDIC stating that the Purchase and Assumption Agreement did not transfer ownership of certain mortgage loans.

On February 9, 2012, BANA sent plaintiff another letter stating that it had no record of owning the 2006 WAMU loan.[3]

On July 1, 2014, judgment entered against plaintiff in the 2010 Foreclosure Action.  Bank of America Nat'l Ass'n v. Nino, No. FST-CV-10-6005691-S, 2014 WL 3893267 (Conn. Super. July 1, 2014).  The court filed a superseding opinion on December 31, 2015.  Bank of America Nat'l Ass'n v. Nino, No. FST-CV-10-

_____

[3]

6005691-S, 2015 WL 9920786 (Conn. Super. Dec. 31, 2015). A judgment of strict foreclosure entered on October 29, 2018. <u>Bank of America National Association v. Nino</u>, No. FST-CV-10-6005691-S (Conn. Super. Ct. Oct. 29, 2018).

Plaintiff describes the 2010 Foreclosure Action as an "unlawful attempted theft of the subject property and extortion of monies from the Plaintiff with the assistance of the State Court." ECF No. 1 at ¶ 33. She alleges that JPMC lacked standing to enforce the 2006 WAMU loan on its own behalf or for BANA. She asserts that in the course of the state court action JPMC misrepresented the ownership of the mortgage loan by relying on a stamped signature of Cynthia Riley on a note purporting to transfer the loan from WAMU's tradename to JPMC. Riley has testified under oath in an unrelated proceeding that WAMU created stamps of her signature that were used by 10 to 12 employees to stamp notes. Because Riley's stamped signature cannot be trusted, plaintiff argues, the orders entered by the state court in the 2010 Foreclosure Action are void.

Plaintiff most recently appealed the 2010 Foreclosure Action decision in November 2018, and her appeal was dismissed on February 13, 2019.[4]

---

[4] Judicial notice is taken of the state court dockets, rulings and proceedings.

II.  Procedural History

Plaintiff filed her complaint in this action on October 22, 2018.  An order on pretrial deadlines was issued the same day, requiring amended pleadings to be filed by December 21, 2018.  ECF No. 2.  The parties filed a Rule 26(f) Report on February 26, 2019, in which plaintiff requested that she be allowed until February 28, 2019, to file motions to join any additional parties.  ECF No. 16 at 4.  Plaintiff also requested leave to file any motion to amend the pleadings in accordance with the requirements of Rule 15.  Id.  The Court entered a scheduling order on March 11, 2019, stating that any motion for leave to amend or join parties would be governed by the good cause standard of Rule 16.  ECF No. 21.  Plaintiff filed her motion to amend the complaint on July 18, 2019.  ECF No. 38.

III.  Legal Standards

Under Rule 12(b)(1), an action is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  In resolving a motion under 12(b)(1), the court "may refer to evidence outside the pleadings."  Id.

Under Rule 12(b)(6), a complaint is properly dismissed when it fails to state a claim on which relief may be granted.  To

withstand a properly supported motion to dismiss under this
Rule, a complaint must present a claim that is "plausible on its
face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The
plausibility standard requires the plaintiff to provide factual
allegations permitting a reasonable inference that the defendant
is liable for the alleged wrong.

Federal Rule of Civil Procedure 15 provides that a court
"should freely grant leave" to amend a complaint "when justice
so requires." Fed. R. Civ. P. 15(a)(2). When a tailored
scheduling order has been entered, a motion for leave to amend
must be considered in light of Rule 16(b)(4), which provides
that the schedule contained in such an order "may be modified
only for good cause." See Holmes v. Grubman, 568 F.3d 329, 334-
35 (2d Cir. 2009). Whether good cause exists turns on the
"diligence of the moving party." Grochowski v. Phoenix Constr.,
318 F.3d 80, 86 (2d Cir. 2003). If the movant can establish
good cause, the more lenient standard of Rule 15(a)(2) applies.
A district court has discretion to deny leave to amend for good
reason, "including futility, bad faith, undue delay, or undue
prejudice to the opposing party." McCarthy v. Dun & Bradstreet
Corp., 482 F.3d 184, 200 (2d Cir. 2007). The federal rules call
for lenient amendment standards so that parties may "assert
matters that were overlooked or were unknown . . . at the time .
. . [of the] original complaint or answer." Smiga v. Dean

Witter Reynolds, Inc., 766 F.2d 698, 703 (2d Cir. 1985).

IV.  Discussion

    A.  Motion to Dismiss

    Defendants move to dismiss the claims in the complaint on the basis of plaintiff's failure to exhaust administrative remedies, the Rooker Feldman doctrine and res judicata.  I first summarize each of these grounds for dismissal then turn to a claim-by-claim analysis of the twenty claims in the complaint.

    1. Failure to Exhaust

    Plaintiff's claims based on alleged wrongdoing by WAMU cannot proceed unless she has exhausted administrative remedies as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(13)D).  FIRREA requires all claims against failed banks to first be filed administratively with the FDIC.  Cassese v. Washington Mut., Inc., 711 F. Supp. 2d 261, 268 (E.D.N.Y. 2010).  District Court jurisdiction over claims covered by FIRREA is available only after completion of the claims procedures outlined in 12 U.S.C. §§ 1821(d)(6)(A) and (d)(8)(C).  Madison v. First Magnus Fin. Corp., No. 08-CV-1562-PHX-GMS, 2009 WL 751603 at *7, (D. Ariz. Mar. 19, 2009); see also Feise v. Resolution Trust Corp., 815 F. Supp. 344, 346 (E.D. Cal. 1993) (". . . Congress expressly withdrew jurisdiction from courts over any claim to a failed institution's assets made outside the statutory claims

procedure.").[5]

   2.  Rooker Feldman[6]

   Under the Rooker Feldman doctrine, Federal District Courts

lack subject matter jurisdiction over suits "that are, in

substance, appeals from state-court judgments." Hoblock v.

Albany Cty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005).

The Supreme Court of the United States is the only federal court

with authority to review state court judgments. Exxon Mobil

Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005).

In a recent clarification of the scope of Rooker Feldman, the

Supreme Court stated that the doctrine is confined to "cases

brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court

proceedings commenced and inviting district court review and

rejection of those judgments." Exxon Mobil, 544 U.S. at 284.

   Accordingly, the Rooker Feldman doctrine applies when four

requirements are met: (1) the federal-court plaintiff must have

lost in state court; (2) the plaintiff must complain of injuries

caused by a state court judgment; (3) the plaintiff must invite

district court review and rejection of that judgment; and (4)

---

[5] To the extent plaintiff's claims against JPMC and BANA are based on wrongs allegedly committed by WAMU, the claims also fail because these defendants did not assume WAMU's liabilities to borrowers. To state a claim for relief against these defendants, plaintiff must rely on acts and omissions that occurred after JPMC acquired WAMU assets from the FDIC.
[6] See Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923), and Dist. Of Columbia Ct. of App. V. Feldman, 460 U.S. 462 (1983).

the state court judgment must have been rendered before the district court proceedings commenced. Hoblock, 422 F.3d at 85.

The first and fourth requirements are met here with regard to every cause of action asserted in the complaint. As will be discussed below, the other requirements are also met with regard to many of the claims.

### 3. Res Judicata

Res judicata prevents plaintiff from renewing claims that were previously litigated in the underlying state court action or raising issues that should have been raised in state court. Res Judicata "is a rule of fundamental repose important for both the litigants and for society." In re Teltronics Servs., 762 F.2d 185, 190 (2d Cir. 1985).

Res Judicata bars "later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." Id.

In this case, Connecticut's law of res judicates applies. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982). Under Connecticut law, "[a] judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." State v. Aillon, 456 A.2d 279, 283 (Conn. 1983).

4. Claim-by-Claim Analysis

Count One

Count one alleges violations of the federal and Connecticut RICO statutes. To prevail on a civil RICO claim, plaintiff must establish that defendants engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013). To adequately allege a pattern of racketeering activity, plaintiff must allege predicate acts of wrongdoing by each defendant. Palatkevich v. Choupak, 152 F. Supp. 3d 201, 214-15 (S.D.N.Y. 2016).

Plaintiff alleges the following predicate acts: (i) identity theft, (ii) sale of plaintiff's personal identifying information, (iii) criminal impersonation by "impersonat[ing] a tradename, WMB-FA, as the lender," ECF No. 1 at ¶ 44, (iv) forgery, (v) criminal simulation, (vi) presenting false evidence, (vii) mail fraud, (viii) use of fictitious names and addresses, (ix) wire fraud, (x) transportation of stolen goods, (xi) commerce by threats or violence, (xi) money laundering, (xii) engaging in monetary transactions in property derived from unlawful activity, and (xiii) "conspiracy against rights."

Predicates (i)-(v), (vii)-(x), and (xi)-(xiii) all appear to attack WAMU's origination of the 2006 WAMU loan using a tradename, its subsequent securitization of the loan, and its

11

alleged falsification of a stamp bearing the signature of Cynthia Riley in transfer documents.[7]  Because all these matters involve WAMU's conduct before it failed, and because plaintiff has not exhausted administrative remedies under FIRREA, these alleged predicates cannot support a claim for relief.  These same predicates also fail under the Rooker Feldman doctrine because they attempt to directly attack one of the state court's central determinations in the foreclosure action: that the assignment of plaintiff's mortgage from WAMU to JPMC was valid.

In the foreclosure action, plaintiff argued that the assignment was invalid on the ground, among others, that BANA was not the rightful holder of the note and thus lacked standing to bring the foreclosure proceeding.  In the state court's corrected opinion, it found that BANA commenced the foreclosure procedure when it was the rightful owner of the 2006 WAMU loan despite not being in the chain of title.  Bank of America, Nat'l Ass'n v. Nino, 2015 WL 9920786, at *36.  The court found that BANA had standing because the Connecticut legislature has created "a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him."  See RMS Residential Properties, LLC v. Miller, 32 A.3d 307, 313 (Conn. 2011), abrogated on other

---

[7] While some of these predicates may not directly attack the origination of the loan, they survive only if that origination was fraudulent, such as predicate (xii).

grounds by <u>J.E. Robert Co., Inc. v. Signature Properties, LLC</u>,
71 A.3d 492, 502 (Conn. 2013)); <u>see</u> <u>also</u> Conn. Gen. Stat. § 49-
17 ("Foreclosure by owner of debt without legal title"). The
state court addressed BANA's failure to properly record its
ownership for two years by forfeiting BANA's interest on the
loan during that period (amounting to $84,988.98). <u>Bank of
America, Nat'l Ass'n v. Nino</u>, 2015 WL 9920786, at *38.
Accordingly, plaintiff cannot mount a second challenge to the
validity of the assignment here. <u>See</u>, <u>e.g.</u>, <u>Graham v. Select
Portfolio Servicing, Inc.</u>, 156 F. Supp. 3d 491, 503 (S.D.N.Y.
2016) (applying <u>Rooker Feldman</u> to reject federal suit predicated
on theory that bank lacked standing in underlying state court
foreclosure action due to invalid assignments).

Predicate (vi) fails under the <u>Rooker Feldman</u> doctrine as
it seeks to relitigate the state court's denial of plaintiff's
February 20, 2018 motion to dismiss the foreclosure action on
the ground that the servicer and the attorneys commenced the
foreclosure action through fraud and deceit. That motion to
dismiss was denied by the state court on April 27, 2018. <u>Bank
of America National Association v. Nino</u>, No. FST-CV-10-6005691-S
(Conn. Super. Apr. 27, 2018); <u>see</u> <u>also</u> <u>Drew v. Chase Manhattan
Bank, N.A.</u>, No. 95-cv-3133 (JGK), 1998 WL 430549, at *5-6
(S.D.N.Y. July 30, 1998) (applying <u>Rooker Feldman</u> to dismiss
claims that defendants had obtained a foreclosure judgment by

13

making false representations in state court).

Count One also fails to state a claim because it was brought outside the four-year statute of limitations.  Koch v. Christie's Intern, PLC, 669 F.3d 141, 148 (2d Cir. 2012).

Count Two

Count two alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") for concealment of material facts in connection with the origination of the mortgage, the foreclosure proceedings, and other mortgage "transactions."[8] Insofar as the CUTPA claim is based on matters preceding the failure of WAMU, it must be dismissed due to plaintiff's failure to exhaust administrative remedies under FIRREA.  Insofar as the CUTPA claim is based on the foreclosure proceedings and any other "transactions," it must be dismissed under Rooker Feldman because it seeks to overturn the state court's rulings in the 2010 Foreclosure Action.

Count Three

Count three alleges violations of the Fair Debt Collection Practices Act based on defendants' use of allegedly false representations and other deceptive means to attempt to collect on the 2006 WAMU loan.  This claim fails under the Rooker

---

[8] Plaintiff does not specify the mortgage "transactions" complained of, but the only transactions in this case involve the loan origination, the 2008 JPMC assumption of WAMU assets, and the 2012 recording of the assignment from JPMC to BANA.

<u>Feldman</u> because it seeks to overturn the state court's findings that plaintiff has defaulted on her mortgage obligations and its conclusion that BANA should be granted a judgment of strict foreclosure.

### Counts Four and Thirteen

Count four alleges violations of the Fair Credit Reporting Act based on defendants' reporting to credit agencies regarding plaintiff's loan. Count thirteen alleges defamation based on defendants' allegedly false statements to credit reporting agencies that plaintiff had defaulted on her loan. To prevail on either claim, plaintiff must prove that defendants' statements were false. Because the state court found that plaintiff was in default, this claim is barred by <u>Rooker Feldman</u>.

### Count Five

Plaintiff's fifth count alleges unjust enrichment. To state a claim for unjust enrichment, a plaintiff must plausibly allege that (1) defendants received a benefit; (2) defendants unjustly did not pay the plaintiff for the benefit; and (3) the failure of payment was to plaintiffs' detriment. <u>Ayotte Bros. Const. Co. v. Finney</u>, 42 Conn. App. 578, 581 (1996). To prevail on this claim, plaintiff would have to prove that the 2006 WAMU loan was invalid and that her mortgage payments were therefore made without any obligation. The validity of the mortgage and

plaintiff's obligation to repay the loan have already been established in state court.  Thus, this claim also fails under Rooker Feldman and res judicata.

### Counts Six, Seven, Eight, and Twelve

Counts six, seven, eight, and twelve all sound in fraud and negligent misrepresentation.  The theory of all these counts is that defendants negligently or fraudulently misrepresented the ownership of the 2006 WAMU loan.  Finding for the plaintiff on any of these counts would directly contradict and overturn rulings of the state court in the foreclosure action.  This claim therefore fails under Rooker Feldman doctrine and res judicata.

### Counts Nine, Ten, Eleven

Count nine, ten, and eleven directly attack the decision in the foreclosure action as they alleges that "each defendant [aided and abetted] as a collective effort to unlawfully procure monies from the plaintiff under the duress of an unlawful foreclosure debt collection action."  ECF No. 1 at ¶ 86.  Accordingly,  these counts are barred by Rooker Feldman and res judicata.

### Count Fourteen

Count fourteen alleges violations of the Truth in Lending Act and the Real Estate Settlement Procedures Act based on defendants' use of a tradename at origination, failure to

provide responses to plaintiff's RESPA requests, and false notice of sale and transfer of ownership communications in 2014. The origination claim must be dismissed because plaintiff has not exhausted administrative remedies under FIRREA; the RESPA claim is unsupported by factual allegations; and the claim concerning the 2014 documents is barred by Rooker Feldman doctrine and res judicata.

## Counts Fifteen and Sixteen

Count fifteen is a quiet title claim alleging that there "is a dispute as to whether any of the Defendants are legally entitled" to plaintiff's property.  ECF No. 1 at ¶ 112.  But the state court has decided that BANA is entitled to the property. Therefore, this claim fails under the Rooker Feldman doctrine and res judicata.

Count sixteen is a claim for slander of title alleging that the origination of the loan was false, JPMC never acquired any loans, and, therefore, defendants' statements about owning the 2006 WAMU loan were false.  The origination claim fails due to plaintiff's failure to exhaust administrative remedies under FIRREA; the other claims fail under Rooker Feldman and res judicata because the state court has already determined that JPMC acquired the 2006 WAMU loan.

## Counts Seventeen, Eighteen

Counts seventeen and eighteen allege violations of the Fair

Housing Act, the Equal Credit Opportunity Act, and the Home Ownership Equity Protection Act, relating to the origination of the loan. These claims are barred by plaintiff's failure to exhaust administrative remedies under FIRREA.

Count Nineteen

Count nineteen seeks declaratory relief against defendants, including a declaration that the 2006 WAMU loan is void. Voiding the loan would require contradicting the state court. Therefore, this count is barred by Rooker Feldman and res judicata.

Count Twenty

Count twenty seeks injunctive relief enforcing a series of consent decrees against defendants in other courts.[9] Consent decrees can be enforced only by "a party, a party's privy, or an intended beneficiary." M.S. ex rel. M.S. v. New York City Dept. of Educ., 734 F. Supp. 2d 271, 279 (E.D.N.Y. 2010). Plaintiff does not allege that she is a party, a party's privy, or an intended beneficiary in two of the challenged consent decrees.

_____

[9] Plaintiff alleges that the defendants have been subjected to enforcement action based on activities relating to mortgages and foreclosures, including: (1) a consent judgment dated April 13, 2011, against JPMC entered by the Office of the Comptroller of the Currency in In the Matter of JPMorgan Chase Bank, N.A. (Order No.: AA-EC-11-15); (2) an agreement dated March 12, 2012, between the Department of Justice, Department of Housing and Urban Development, and 49 State Attorney Generals with a number of mortgage servicers including JPMC and BANA; (3) a civil complaint dated March 14, 2012, filed by the United States and 49 State Attorney Generals against BANA; and (4) a settlement in the latter case. There is no allegation that any of these matters encompassed plaintiff's mortgage or the underlying foreclosure proceeding.

Therefore, she lacks standing to bring claims based on those decrees.

Plaintiff does claim to be a party to the April 4, 2012 consent decree in <u>United States of America v. Bank of America N.A.</u>, 1:12-cv-00361-RMC (D.C. Cir. 2012) on the ground that the state of Connecticut was a party and brought the suit in a <u>parens patriae</u> capacity.  Numerous courts have held that individual borrowers lack standing to enforce the National Mortgage Settlement because they are merely incidental beneficiaries.  <u>See</u>, <u>e.g.</u>, <u>Lawrence v. Wells Fargo Bank, N.A.</u>, 2014 WL 2705425, at *6 (N.D. Cal., June 13, 2014) ("The court agrees with Wells Fargo that plaintiff [borrower] has no standing to enforce the National Mortgage Settlement consent judgment.  Numerous courts have held that individual borrowers are merely incidental beneficiaries of the National Mortgage Settlement, and so have no right to bring third-party suits to enforce the consent judgment.").  The consent decree in question also explicitly states: "[Bank of America]'s obligations under this Consent Judgment shall be enforceable solely in the U.S. District Court for the District of Columbia."  <u>United States of America v. Bank of America N.A.</u>, 1:12-cv-00361-RMC, ECF No. 11 at 204-205 (D.D.C. Apr. 4, 2012).  For these reasons, count twenty must be dismissed.

    B.  <u>Motion to Amend</u>

Under the initial scheduling order, the deadline for filing motions to amend or join parties was December 21, 2018. ECF No. 2. The March 11, 2019 scheduling order notified counsel that motions to amend or join additional parties would be governed by the good cause standard of Rule 16. Plaintiff filed her motion to amend on July 18, 2019. Plaintiff must therefore meet the good cause standard of Rule 16 in order to obtain leave to amend. Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). Plaintiff does not even attempt to meet the good cause standard of Rule 16. For this reason alone, her motion for leave to amend is unavailing.

It also appears that plaintiff could not show good cause in any event. The existence of good cause "turns on the diligence of the moving party." Holmes, 568 F.3d 329, 335. If a party has not been diligent, "the good cause inquiry should end." Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003). A party has not acted with sufficient diligence when it bases "a proposed amendment on information that the party knew, or should have known, in advance of the deadline." Sokol Holdings, Inc. v. BMB Munai, Inc., No. 05 Civ. 3749(KMW)(DF), 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009).

Here, plaintiff's claims relate to a mortgage loan executed in 2006. The loan has been the subject of litigation since the commencement of the 2010 Foreclosure Action. Plaintiff made and

lost several motions to dismiss in that action, lost at trial, had multiple appeals dismissed, and even attempted to remove the state court action to this court in 2017. See Bank of America, N.A. v. Nino, 17-cv-1186 (AVC), ECF No. 16 (D. Conn. Mar. 1, 2019) (remanding foreclosure action to state court). Given this history, it is too late for plaintiff to be adding new claims against new defendants.

Futility

Leave to amend a complaint need not be granted when amendment would be futile. McLaughlin v. Citimortgage, Inc., 726 F. Supp. 2d 201, 221 (D. Conn. 2010). An amendment is futile when the proposed new claims would not survive a motion to dismiss. Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). The following claims in plaintiff's amended complaint contain the same allegations as claims in the existing complaint, all of which are subject to dismissal for the reasons given above:

- Amended count two = original count three

- Amended count three = original count two

- Amended count four = original count one

- Amended count five = original count seventeen

- Amended count six = original count eighteen

- Amended count seven = original count five

- Amended count eight = original count six

- Amended count nine = original count seven

- Amended count ten = original count eight

- Amended count eleven = original count nine

- Amended count thirteen = original count ten

- Amended count fourteen = original count eleven

- Amended count fifteen = original count twelve

- Amended count sixteen = original count thirteen

- Amended count seventeen = original count fourteen

- Amended count eighteen = original count fifteen

- Amended count nineteen = original count sixteen

- Amended count twenty = original count nineteen

Compare ECF No. 1 with ECF No. 38.  All these proposed amended claims would be subject to dismissal for the same reasons the corresponding original claims are being dismissed.  The only two "new" claims that are not directly copied and pasted from the original complaint are counts one and twelve.

Amended count twelve restates the same allegations of original count twenty, but changes the relief sought from injunctive relief to damages for fraud.  Plaintiff does not change any allegations of the original claim to fit the new theory of fraud — she merely changes the title of the claim.

Amended count one is the only claim that is entirely new.

Plaintiff alleges abuse of process in defendants' prosecution of the 2010 Foreclosure Action. Plaintiff alleges that defendants abused process by "tampering with and fabricating evidence." ECF No. 38-1 at ¶ 49. In the course of the underlying foreclosure action, plaintiff argued that the action should be dismissed on this same basis. The state court rejected that argument and found that the evidence was competent. Thus, amended count one would have to be dismissed as well.

V.  Conclusion

Accordingly, defendant's motion to dismiss is hereby granted, and plaintiff's motion to amend is denied. The Clerk may enter judgment and close the file.

So ordered this 31st day of March 2020.


_____/s/ RNC_____
Robert N. Chatigny
United States District Judge